152 Pa. Commonwealth Ct. 576 (1993)
620 A.2d 558
MILLCREEK TOWNSHIP, Appellant,
v.
N.E.A. CROSS COMPANY and Vineyard Oil and Gas Company, Appellees.
Commonwealth Court of Pennsylvania.
Argued February 6, 1992.
Decided January 12, 1993.
Reargument Denied March 22, 1993.
*578 Donald E. Wright, for appellant.
J. Bradford McIlvain, for appellees.
Before DOYLE and KELLEY, JJ., and BARRY, Senior Judge.
KELLEY, Judge.
Before the court is the appeal of Millcreek Township from the dismissal of its preliminary objections by the Court of Common Pleas of Erie County (trial court) in an inverse condemnation proceeding.
N.E.A. Cross Company (Cross) and Vineyard Oil and Gas Company (Vineyard) negotiated several leases to explore for natural gas and develop wells in Millcreek Township. With respect to the properties which are the subject of this action, Cross and Vineyard had not yet developed wells as of February 17, 1986. These undeveloped parcels are located in agricultural or residential zoning districts.
On February 17, 1986, the township enacted ordinance 86-5, which restricts oil and gas wells to property zoned for light or heavy industry. On October 12, 1989, Cross and Vineyard filed in the trial court a petition for determination of de facto taking and appointment of viewers. The petition alleged that the ordinance constituted a de facto taking "of all right, title and interest which Cross and Vineyard held in the undrilled leaseholds." The petition further alleged that Cross had suffered damages in excess of $4,000,000 and that Vineyard had suffered damages in excess of $10,000,000 because they were unable to develop wells on the subject properties. The township filed preliminary objections to the petition which were dismissed by the trial court. In so doing, the trial court stated that Cross and Vineyard's petition was not filed under the Eminent Domain Code[1] (Code) and that the trial court considered the action to be a civil action for damages. The *579 trial court therefore did not rule on whether a de facto taking had occurred. The township has appealed.[2]
Preliminarily, we must note that the trial court erred in stating that this is not an action under the Eminent Domain Code. The filing of a petition for the appointment of viewers, when there has been no declaration of taking filed by the condemnor, is specifically authorized by section 502(e) of the Code, 26 P.S. § 1-502(e). Both parties agree that the trial court erred in this regard, and the trial court opinion is of limited value in our review of this appeal because of this error.
The township's first argument is that the trial court erred in dismissing its preliminary objections without conducting an evidentiary hearing. Much of our case law appears to indicate that an evidentiary hearing is required before preliminary objections to a petition for appointment of viewers are dismissed[3] and, if we accept this argument, a remand would be in order to allow the trial court to conduct such a hearing. In addressing this issue we must examine the relevant sections of the Code and the caselaw, as well as the role of the trial court *580 and the role of preliminary objections in eminent domain proceedings.
When a petition alleging a de facto taking is filed, the trial court must rule on the legal question of whether a de facto taking has occurred. If the court determines that a taking has occurred the case is then sent to a board of viewers to determine damages. See Petition of Ramsey (Ramsey II), 31 Pa.Commonwealth Ct. 182, 375 A.2d 886 (1977). Preliminary objections are the proper response to a petition for appointment of viewers pursuant to section 504 of the Eminent Domain Code, 26 P.S. § 1-504. The last sentence of section 504 states, "If an issue of fact is raised, evidence may be taken by deposition or otherwise as the court shall direct."
By the plain language of section 504, a trial court needs to take evidence only if one or more issues of fact are raised the resolution of which are necessary to ruling on the threshold question of whether a de facto taking has occurred. This court has in fact so held on many occasions.[4] In Petition of Ramsey (Ramsey I), 20 Pa.Commonwealth Ct. 207, 342 A.2d 124 (1975), this court stated:
[I]f a preliminary objection in the nature of a demurrer was filed, the lower court must first decide whether as a matter of law the averments of the petition, taken as true, are sufficient to state a cause of action of a de facto taking. If not, the preliminary objections must be sustained and the petition dismissed or possibly allow the petitioner to amend his pleading. If the averments, taken as true, might establish a de facto taking, the lower court must take evidence by deposition or otherwise so that a judicial determination might be made. If the averments on their face establish a de facto taking, then the preliminary objections must be dismissed as has happened in the case at bar.
*581 Id. at 210, 342 A.2d at 126. Stated another way, if the preliminary objections raise an issue of fact, the resolution of which is necessary for determining whether a de facto taking has occurred, the court must hold an evidentiary hearing. If the preliminary objections do not raise any such issues of fact, the trial court must simply examine the petition and sustain the preliminary objections if the averments of the petition are not sufficient to establish a de facto taking, or dismiss the preliminary objections if the averments do establish a de facto taking.
Of course, the above discussion relates to preliminary objections which are in the nature of a demurrer. The preliminary objections may raise other legal issues by which the trial court may be able to dispose of a case without taking evidence even though there are issues of fact relating to whether a de facto taking occurred.[5]
It appears that there is a conflict between the cases listed in fn. 3 which state that an evidentiary hearing must be held before preliminary objections to a petition for appointment of viewers are dismissed and those cases listed in fn. 4 which state that a hearing must be held only if there is an issue of fact. However, in the cases listed in fn. 3 stating that an evidentiary hearing must be held before preliminary objections are dismissed, the citations of authority for that proposition can all be traced back to earlier cases such as Ramsey I in which the more complete discussion of the role of the trial court is set out. In each of those cases listed in fn. 3 there were indeed issues of fact existing which necessitated a remand. Those cases do not purport to overrule Ramsey I or any similar case, and the recent statement in Stein of the more complete standard confirms that it remains the law. Our conclusion, therefore, is that we need not remand this matter unless necessary to resolve one or more issues of fact relating to whether a de facto taking occurred. We therefore *582 must examine the rest of the township's arguments to see if such an issue exists.
The township argues that Cross and Vineyard do not have standing to bring a condemnation action because they let their leases lapse before filing their petition.[6] The township cites cases involving displacement damages[7] which state that once a leaseholder has let his lease terminate, he cannot have the status of a condemnee. Fisher v. Pittsburgh Public Parking Authority, 433 Pa. 113, 248 A.2d 849 (1969); Redevelopment Authority, Union County v. Property in West Milton, 101 Pa.Commonwealth Ct. 634, 517 A.2d 210 (1986); Hindsley v. Township of Lower Merion, 25 Pa.Commonwealth Ct. 455, 360 A.2d 297 (1976). Cross and Vineyard respond by stating that their leases were valid as of the date of enactment of the ordinance, which is the date the alleged taking occurred, and that the cases cited by the township concern leases which expired before the condemnation.
We agree with Cross and Vineyard that the cited cases are not applicable. In those cases the courts determined not that the tenants had no standing, but that they were not entitled to displacement damages because the tenants were not forced from the premises before the expiration of their leases. In the present case, Cross and Vineyard are alleging that the township's enactment of the ordinance took their leasehold interests away from them at the moment of enactment because they were thereafter prohibited from drilling wells on the properties. Because the alleged harm took place before the expiration of the leases, Cross and Vineyard have standing.
The main issue in this case is, of course, whether a de facto taking has occurred. A leasehold interest is, in fact, a property interest which may not be condemned for a public use without just compensation. Graham Realty Company Appeal, 67 Pa.Commonwealth Ct. 318, 447 A.2d 342 (1982). *583 However, just compensation for the total taking of a leasehold interest are limited to "bonus value" damages, i.e., the difference between the fair rental value of the leased premises and rent actually reserved in the lease. Id. In Graham we stated:
[I]f the fair rental value at the time of the taking is greater than the rent being paid by the lessee, then the lessee is receiving a "bonus" under the terms of his lease. This "bonus", projected over the remaining term of the lease and discounted to its present worth, constitutes the damages which the lessee is entitled to recover.
Id. at 322, 447 A.2d at 344-45. Thus, if there is a taking, Cross and Vineyard are entitled to the difference between the rental payments made from the time of the taking until the leases expired and what Cross and Vineyard would had to have paid for similar leasehold interests during that period. Cross and Vineyard are certainly not entitled to the millions of dollars in lost profits which they seek.
The fact that a leasehold interest is a property interest which may be condemned does not mean that we can conclude as a matter of law that a de facto taking has occurred. In Miller & Son Paving, Inc. v. Wrightstown Township, 499 Pa. 80, 451 A.2d 1002 (1982), our Supreme Court held that the setback requirements of a zoning ordinance, which prevented the landowner from pursuing its quarrying operation on portions of its property, did not effect a taking. In rejecting the landowner's argument that the ordinance was confiscatory, the court stated:
All zoning involves a "taking" in the sense that the owner is not completely free to use his property as he chooses, but such a taking does not entitle the owner to relief, unless the owner's rights have been unreasonably restricted. . . . Reasonable restrictions are valid exercises of the police power and not unconstitutional takings under the power of eminent domain. Restrictions are not per se unreasonable simply because they limit the extraction of minerals. The fallacy of appellant's argument is clear. If a municipality can create a use zone excluding surface mining altogether, then it must *584 surely be able to impose the lesser burden of requiring setbacks for such use in zones in which it is permitted.
Id. at 88, 451 A.2d at 1006 (citations omitted). The import of this language is that a municipality can prohibit a use entirely in a particular zoning district without it being a taking, unless the property owner's rights have been unreasonably restricted. The burden is on the property owner to prove that its rights have been unreasonably restricted, id., and Cross and Vineyard did not have such an opportunity below. We therefore conclude that we must indeed remand for an evidentiary hearing so that the trial court may address this issue.[8]
Accordingly, we will vacate the trial court's order and remand for proceedings consistent with this opinion.

ORDER
NOW, this 12th day of January, 1993, the order of the Court of Common Pleas of Erie County, dated April 26, 1991, at No. 4280-A-1989, is vacated and the matter is remanded for proceedings consistent with this opinion.
Jurisdiction relinquished.
NOTES
[1] Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §§ 1-1011-903.
[2] Cross and Vineyard exhausted the administrative challenge to the validity of the ordinance as required. Odhner v. Township of Woodward, 143 Pa.Commonwealth Ct. 450, 599 A.2d 276 (1991). The board upheld the validity of the ordinance and Cross and Vineyard appealed to the trial court. The trial court's order dismissing the preliminary objections to the petition for appointment of viewers also dismissed Cross and Vineyard's appeal from the board's decision. Cross and Vineyard initially filed a separate appeal with this court from the portion of the trial court's order upholding the board's decision, but that appeal was ultimately discontinued.
[3] See McGaffic v. Redevelopment Authority, City of New Castle, 120 Pa.Commonwealth Ct. 199, 548 A.2d 653 (1988), petition for allowance of appeal denied, 523 Pa. 644, 565 A.2d 1168 (1989); Holmes Protection of Pittsburgh v. Port Authority of Allegheny County, 90 Pa.Commonwealth Ct. 342, 495 A.2d 630 (1985), petition for allowance of appeal denied, 519 Pa. 656, 546 A.2d 60 (1988); Department of Transportation Appeal, 83 Pa.Commonwealth Ct. 184, 476 A.2d 519 (1984); City of Pittsburgh v. Haffner, 80 Pa.Commonwealth Ct. 53, 471 A.2d 116 (1984); Beluschok v. Peoples Natural Gas Co., 79 Pa.Commonwealth Ct. 540, 470 A.2d 196 (1984); Mountaintop Area Joint Sanitary Authority v. St. Jude Church, 73 Pa.Commonwealth Ct. 185, 457 A.2d 1024 (1983); Department of Transportation v. Florek, 71 Pa.Commonwealth Ct. 615, 455 A.2d 1263 (1983); City of Philadelphia v. Martorano, 38 Pa.Commonwealth Ct. 573, 394 A.2d 674 (1978); Greger v. Canton Township, 25 Pa.Commonwealth Ct. 279, 360 A.2d 792 (1976).
[4] See Stein v. City of Philadelphia, 125 Pa.Commonwealth Ct. 225, 557 A.2d 1137 (1989); Miller v. Department of Transportation, 91 Pa.Commonwealth Ct. 622, 498 A.2d 1370 (1985); Harborcreek Township v. Ring, 48 Pa.Commonwealth Ct. 542, 410 A.2d 917 (1980); Jennings v. Department of Transportation, 38 Pa.Commonwealth Ct. 206, 395 A.2d 582 (1978); Jacobs v. Nether Providence Township, 6 Pa.Commonwealth Ct. 594, 297 A.2d 550 (1972).
[5] We must also note that not all issues of fact will relate to whether there was de facto taking. Some issues of fact will relate to the level of damages, and these issues are to be left to the board of viewers.
[6] Cross and Vineyard's petition for appointment of viewers lists all of the relevant leases and the dates that they were allowed to expire.
[7] Such damages are now authorized by § 601-A of the Code, added by the Act of December 29, 1971, P.L. 640, as amended, 26 P.S. § 1-601A.
[8] We must note that this case is not controlled by McClimans v. Board of Supervisors, Shenango Township, 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987) (McClimans I), in which this court held that if a township's prohibition of strip mining in a particular zoning district conclusively prevented landowners from accessing coal beneath their properties, then a taking has occurred. The case is distinguishable because of Pennsylvania's separate coal estate. If the owner of the coal estate has no way to legally extract the coal, then his entire estate in land has been rendered valueless. The rule in McClimans I does not apply to a leasehold interest to explore for natural gas.

Similarly, the United State Supreme Court's recent pronouncement in Lucas v. South Carolina Coastal Council, ___ U.S. ___, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), is not applicable. In Lucas, the court held that where a government regulation deprives a landowner of all economically beneficial uses of his land, it effects a taking unless the background principles of the law of property and nuisance of the state where the property is located already place a restriction on the uses which are regulated. Lucas involved a fee simple interest in land which was rendered valueless by the relevant regulation, and there is nothing in that opinion to indicate that the holding extends to leasehold interests.